# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CV F 03-6064 AWI LJO** |
| | ) | |
| **Plaintiff,** | ) | **PRETRIAL ORDER** |
| | ) | |
| **v.** | ) | **Motions In Limine Hearing:** |
| | ) | **November 2, 2005** |
| **87.98 ACRES OF LAND MORE OR** | ) | **10:00a.m., Courtroom 3** |
| **LESS IN THE COUNTY OF MERCED;** | ) | |
| **DONN RAYMOND CHAMPION, et al.,** | ) | **Trial:  November 8, 2005** |
| | ) | **8:30 a.m., Courtroom 3** |
| **Defendants** | ) | |
| | ) | **RULES OF CONDUCT** |

The pretrial conference was held on October 28, 2005.  The trial in this matter is set for Tuesday, November 8, 2005.  The parties currently estimate that the trial shall take nine days.

I.  Jurisdiction and Venue

_____Venue is proper in this Court pursuant to 28 U.S.C. §1403.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1358.

II.  Jury Trial

Defendant requests a jury.

2.1.   Order of Proof

The order of plaintiff's and defendant's are reversed in a condemnation trial and

defendant has the burden of proof.  Accordingly in this case defendant will open and close.

III.  Facts

    A.  Undisputed Facts

The following facts are admitted and require no proof:

    A.  On August 7, 2003, plaintiff filed a Complaint in Condemnation seeking an easement interest in 87.98 acres of property under its power of eminent domain.  Plaintiff's complaint states "[t]he public use for which said interests in the land are to be taken are easements for a transmission line and access road to be used as an integral part of the power transmission system of the Pacific Northwest-Pacific Southwest Intertie Project".  The date of taking is August 7, 2003.

    B.  Defendant owns title in fee to the property subject to this action, which comprises an aggregate of parcels totalling 3,220.52 acres of land, including the 87.98 acres to which plaintiff obtained an easement interest ("subject property").  The 87.98 acres is more specifically described in Schedule "A" attached to plaintiff's Declaration of Taking.  Defendant filed an answer in this action, among other things, challenging the taking or alternatively seeking severance damages pursuant to the same on October 23, 2003.

    C.  On July 29, 2003, plaintiff deposited $39,430 as its estimated just compensation for this taking.  On July 13, 2005 and pursuant to the parties' stipulation, the Court ordered the clerk to issue a check to defendant in the above amount, "plus interest earned, less distribution for registry service fee."

    D.  Plaintiff obtained an Order for Delivery of Possession filed by the Court on August 12, 2003.

    E.  On January 22, 2004, the Court endorsed by way of formal order the parties' stipulation to striking defendant's affirmative defenses.  As a result, the parties agreed that the case should "proceed against [defendant] on the issue of just compensation, including [defendant's] entitlement to severance damages.

F.      As set forth in defendant's "Statement of Genuine Issues in Opposition to Motion for Partial Summary Adjudication that Residential Subdivision is Not the Highest and Best Use" filed on or about September 9, 2005, the following additional facts are undisputed:

**THE PROPERTY**

1.      There are no structures on the subject property, excepting the existing and new transmission lines, one old cabin, abandoned wind turbines, working corrals and two wells with pumping facilities.

2.      The larger parcel consists of 3,220.52 acres of raw grazing land.

3.      The condemnation is for easements for a transmission line, consisting of 74.89 acres for the transmission line and 13.09 acres for access easements.

4.      The easement is 200 feet wide.

5.      The property was inspected by plaintiff's appraiser Correia on February 17, 2005, with the effective date of valuation being August 7, 2003, the date plaintiff filed the Declaration of Taking.

6.      The property is located about one mile south of State Highway 152, about five miles south of Santa Nella in Merced County.  The property is west of Interstate 5.

**THE PLANNING AND ZONING**

7.      The property is zoned A-2, exclusive agriculture with a minimum parcel size of 160 acres.

7(A)    The Merced County General Plan calls for exclusive agriculture in this area.

7(B)    The "Foothill pasture" designation is described in the General Plan, and limits the land to one dwelling per 160 acres. (General Plan, Land Use, p. I-12, I-17.)

7(C)    Discretionary land use applications, such as new subdivisions, "must be found consistent with the General Plan prior to approval."  (Id., at p. I-1).

7(D) The subject property's General Plan and zoning would need to be amended for defendant to develop the subject property.

3

**WATER**

8(A)    The subject property's water supply consists only of two wells and one spring.

8(B)    Pursuant to SB 221, the verification of an adequate supply of water is a condition of approval for the tentative map.

9(A)   The subject property was annexed into the San Luis Water District's boundary in 1996.

9(B)    The San Luis Water District wrote defendant a letter on November 11, 2003 stating, among other things, that the annexation will not result in the land's entitlement to an additional water allocation from the District.

9(C)    Gary Sawyers is the General Counsel for the San Luis Water District, and is generally familiar with the subject property.

9(D) The San Luis Water District is legally prohibited from delivering water to the subject property or any other land that has not satisfied the requirements of the Endangered Species Act or SB 221.

9(E) Gary Sawyers, on the date of his deposition, said he is not aware of any water for sale on a permanent basis within the District's boundary.

9(F)    Gary Sawyers, on the date of his deposition, stated it would be challenging to find a seller of water from outside the Water District because there are not a lot of sellers out there.

9(G) The Local Agency Formation Commission (LAFCO) approved Agua Fria's annexation into the water district (1996).

10.    Residential subdivision development of the subject property could not be adequately supplied by well water.

**SURROUNDING AREA, COMPARABLES AND APPRAISALS**

11(A) The Santa Nella community area has been designated as a potential growth area within the next 20 years.

11(B) The subject property, however, is not located within the specific urban

4

development plan area of Santa Nella.

12.     Of the seven properties to which defendant's appraiser compared Agua Fria, six are entitled to agricultural water from the San Luis Water District.  All of these properties contain some form of agricultural zoning.  The one parcel without an entitlement to agricultural water is zoned highway commercial.

12(A) The Villages is in the process of attempting to secure and identify water rights for its development.

13(A) Merced County approved an initial Guidance Package for the Villages in 1991, as amended in 1993, to initiate the residential development process for the Villages.

13(B) Informal discussion between the Applicant and Merced County began regarding the Villages in 1989.

13(C) Merced County decided to complete a Notice/New Initial Study regarding the Villages in the fall of 2004 "considering the length of time since the original Initial Study was released for this Project (1992) and given the various land use changes that have been added to the proposed property since that time.

13(D) The Notice of Initial Study states the proposed Villages development would be developed in phases over a 25 year period.  Development of the Villages Community will occur in phases over an estimated 25-year period.

13(E) The Wild Wind Ranch portion of Agua Fria (1,328 acres) is designated as urban reserve on the Villages' proposed Specific Urban Development Plan.  The rest of Agua Fria property is not within the area to be developed under the Villages project.

14.  The proposed developable area of Agua Fria is 805 acres of the 3,220 acres to meet the 3:1 ratio open space requirement for mitigation of Kit Fox habitat and protection of their identified movement corridor.

B.  Disputed Facts

As to factual matters in dispute, the parties attach to this statement as Exhibit "A" the

5

"Statement of Genuine Issues In Dispute" that defendant filed on or about September 9, 2005 in response to plaintiff's motion for partial summary judgment regarding the issue of highest and best use.  In addition to those undisputed facts identified above, the Statement of Genuine Issues identifies factual disputes in the case.

In addition, the parties dispute the issue of amount of just compensation due to the defendant.  Plaintiff therefore maintains that those facts relevant to just compensation are likewise in dispute.  Plaintiff's appraiser (Correia) values the fee value of the land at approximately $955/acre based in part on his conclusion that the highest and best use is agriculture. For the power line easement of 74.89 acres he values that easement as 90% of fee or approximately $855/acre, producing $64,031 in compensation, and for the access, maintenance road of 13.09 acres he values that easement at approximately 99% of fee or $954/ac for $12,488 in compensation. The total compensation for the taking is <u>$76,519</u>.

Defendant's appraiser (Gimmy) conversely values the fee value of the land at $21,000/acre for the developable portion of the land of 805 acres and $1000/acre for the balance of the land (2,415 acre), based on his conclusion that the highest and best use is planned residential community and/or developer-purchasers recognize the development potential of the land for such use. Because defendant maintains that the power line easement of 74.89 acres traverses the developable portion of the property, defendant's appraiser values that at 90% of fee for $1,415,000. As to the 13.09 acres of access, maintenance road, he values that at 10% of fee, considering it the equivalent of a temporary construction easement, for $27,000. Accordingly, defendant's appraiser values the total compensation for the taking of the easements at $1,442,000.

Plaintiff's appraiser finds no severance damage. Defendant's appraiser finds severance damage.  Defendant's appraiser maintains that the impact of the transmission line over the developable area of the remaining property has the effect of wiping out any planned residential development of the property, according to defendant's experts.  According to defendant's

6

1  appraiser, this affects 805 acres, reducing its before value from $21,000/acre to $1000/acre, for

2  damages of $14,858,000.

3       Defendant's appraiser also opines that the Campion land could be reasonably assembled

4  with adjacent land on which Campion held right to purchase.  Defendant maintains that this

5  would increase the developable area to 1,020 acres on Campion land. The loss of development to

6  that larger area produces additional damages of $1,700,000, based on assemblage.  Plaintiff filed

7  a motion to preclude the presentation of any evidence at trial related to the value of just

8  compensation based in any way on the value of land that defendant has never owned (Motion in

9  Limine re Gimmy Opinion #2).  The parties await the court's ruling regarding this motion.

10      Finally, Defendant's appraiser has investigated public project interference and delay of

11 Campion processing of his development applications and has found pre-condemnation damages

12 of $12,495,000.00.  Defendant intends to use his appraiser's opinion in this respect to add this

13 amount to the total severance damage amount of $14,658,000.00 referenced above.  Plaintiff

14 filed a motion to preclude the presentation of any evidence at trial relating to development efforts

15 defendant chose not to undertake (Motion in Limine re Gimmy Opinion #3).  The parties await

16 the court's ruling regarding this motion.

17      Plaintiff contends that the following additional facts are in dispute.  These disputes relate

18 to the extent:

19      a.   The Merced County General Plan provides that the area of Agua Fria and

20 the Villages is or is not prime agricultural land to be preserved from development.

21      b.   Adjacent properties known as the Villages of Laguna San Luis include no

22 portion of the subject property other than Wild Wind Ranch and the extent the Villages

23 has been in the pipeline seeking approval to develop for a very long time.

24      c.   Developing residential subdivision on the subject property would require

25 amending the General Plan.

26      d.   The subject property is or is not entitled to a supply of water from the San

27

28                                    7

Luis Water District.

e.      Agua Fria's annexation into the water district enables it to receive CVP water for municipal and industrial use.

f.  The EIR prepared for the Agua Fria inclusion into the District shows the ultimate build-out of Agua Fria for a planned residential community per the Specific Urban Development Plan Diagram.

g.      The State Water Resource Control Board approved a Water Right Order for 1,645 acres of Agua Fria into the CVP (1997), which states "water for the project will be provided from existing users within the SLWD or from other CVP contractor's service areas."

h.      The U.S. Bureau of Reclamation approved the Agua Fria annexation, enabling the conversion of agricultural water resources to municipal and industrial use.

i.      Brian Vail, one of the alleged owner-developers of the Villages and the developer of the Fox Hill residential community, have been purchasing water rights from agricultural parcels in the District.

j.      Developers have been acquiring water from outside the District that will be moved into the District.

k.      Gary Sawyers has represented a number of other districts and a number of private landowners, farmers, as well as development interests who are interested in either buying or selling water.

l.      The water district has very liberal policies with respect to allowing land owners to transfer water among themselves.

m.      That Mr. Gimmy's properties identified as comparable to Agua Fria contain a highway commercial designation that Agua Fria neither possesses nor seeks, are zoned like Agua Fria, and/or have an entitlement to ag water from the water district.

n.      Mr. Gimmy's comparable sales 1 and 3 only, have a portion of their land

zoned highway commercial and were not purchased for that use.

o.      Defendant has agricultural water from the District for Agua Fria.

p.      Adjacent properties known as the Villages of Laguna San Luis includes no portion of the subject property other than Wild Wind Ranch.

q.      The Villages has been in the pipeline seeking approval for development for a long time.

r.      Merced County prepared, with the Villages consultant, a Preliminary Draft Community Specific Plan.

s.      Merced County was the lead agency for Administrative Draft EIR that was completed for the Villages Community Specific Plan.

t.      The proposed Specific Urban Development Plan Diagram in the Initial Study of 2004 is virtually identical to the Proposed Specific Urban Development Diagram in the Preliminary Draft Community Specific Plan for the Villages.

u.      Defendant can process Agua Fria's general plan amendment and rezoning independent of the Villages' application.

v.      The County Planning Staff, in 1995, recommended a text revision to the Villages' proposed CSP to transfer the density of development from Wild Wind Ranch to Agua Fria, given the transfer of development density avoids impact on wildlife habitat.

w.      The proposed Agua Fria Development Plan, which defendant maintains as being described as the Specific Urban Development Plan Diagram in the EIR and providing for this protection of Kit Fox habitat and movement corridor land, has the conceptual approval of U.S.F.W.S. and C.D.F.G.

x.      That only 1/4 of the subject property's acreage could be developed even if the property was designated residential subdivision by the General Plan, zoned to allow for residential use, and had a contract for water.

y.      The 3:1 open space requirement is for mitigation of Kit Fox habitat and

1   other open spaces uses.

2           z.      Plaintiff also contends that the parties dispute the height and location of

3   the Path 15 power lines and towers.

4           Defendant maintains that his Statement of Genuine Issues in opposition to Motion for

5   Partial Summary Adjudication that Residential Subdivision is not the Highest and Best Use, filed

6   with the Court on September 9, 2005, and the additional facts set forth above to be undisputed

7   under Section F are the general facts of the case and are not intended to be inclusive of all the

8   facts of the case, whether disputed or undisputed. Condemnation cases are primarily expert

9   driven as to testimony; the experts ostensibly gather data and then based on their investigation,

10  education and experience, provide opinions based on the data presented. But, how those facts are

11  interpreted by the experts in forming their respective opinions are in dispute with respect to the

12  following issues:

13          A.      Highest and best use of the property, including a determination of the reasonable

14  probability of defendant's rezoning and development, as well as defendant's reasonable

15  probability of obtaining sufficient water for development, as of the date of the taking;

16          B.      Extent of area of developable property on subject property, including the extent of

17  defendant's ability to relocate developable area on other portions of remaining property;

18          C.      Comparability of sales utilized to support opinions; and

19          D.      Severance Damages.  With respect to the amount of defendant's severance

20  damages, defendant intends to introduce evidence with respect to (1) effect of fear of EMF on

21  developer-purchasers and individual future home buyers (pending the Court's ruling on the U.S.

22  Attorney's motion to exclude EMF testimony of Sage), (2) noise and crackling from Path 15, (3)

23  visual impacts, (4) liability issues, (5) fire hazards, (6) transmission line maintenance intrusion,

24  and (7) bisection of defendant's claimed developable area by the Path 15 easement.

25          Plaintiff continues to strenuously maintain that the issue of severance damages should be

26  addressed solely by appraiser testimony with respect to the effect the transmission line has on

27

28                                          10

market value only.  The parties await the Court's rulings in this regard.  Plaintiff also anticipates

moving in limine to exclude any evidence not previously produced pursuant to Federal Rule of

Civil Procedure 26, as well as to exclude any evidence of settlement negotiations pursuant to

FRE 408.

<u>C.  Disputed Evidentiary Issues</u>

A.      Preservation of Issues Raised by Plaintiff's <u>Pre-Trial Motions</u>

Plaintiff maintains that it raised very significant issues by way of four pre-trial Motions in

Limine, which were filed August 5, 2005, and were argued on October 11 and 17, 2005.  Among

other things, the four Motions called upon the Court to exercise pre-trial screening under Rule

71A(h) governing condemnation cases, and to exclude irrelevant evidence under Rule 401, and

unduly prejudicial evidence under Rule 403.  The Motions also called upon the Court to screen

expert testimony pursuant to Rules 702 and 703 as applied by the Supreme Court's decisions in

<u>Daubert</u> and <u>Kumho Tire Company.</u>   On October 17, 2005, the Court made some oral rulings

from the bench, stating that a written decision would follow.  This Statement precedes any such

written decision.  The purpose of this Section of this Statement, is to cooperate  with the Court in

preserving the issues raised, while at the same time minimizing repetition of Motions that do not

meet the criteria —such as new law or new facts–expected on a Motion for Reconsideration, and

minimizing repetitive or unnecessary objections during the Trial.

*1.  Motion for Partial Summary Adjudication, or in the*
*Alternative, Motion in Limine to Exclude Evidence <u>of Residential Subdivision as Highest and</u>*
*<u>Best Use</u>*

This Motion included extensive briefing and Exhibits filed by both sides.  By way

of brief description, without rearguing the Motion here, contentions included that residential

subdivision on the 3220 acre ranch was not reasonably likely in the near future, and that there

was not a reasonable likelihood of amending the General Plan and changing the zoning in the

near future, to make residential subdivision legally permissible on the ranch.  Absence of any

showing of likely Plan amendment, and absence of water for residential use, were among the

issues argued.  As the Court stated on October 11, 2005, this was a significant Motion.

On October 17, 2005, the Court characterized the Motion as one for summary adjudication, noted the burden  on the moving party, and denied the Motion.  Though the Court did not appear to expressly rule on the alternative basis for the Motion–Motion in Limine–plaintiff expects based on what the Court said at the hearing, that the Court will deny that as well in its written ruling.

In any event, plaintiff wishes to clearly preserve the issues raised by this Motion, for post-verdict proceedings in the District Court, and for appeal from judgment.  Plaintiff requests the Court to determine in the Pre-trial Order what, if anything, further, is necessary for plaintiff to preserve the issues raised by this Motion.

It is defendant's position that the Court did rule on the U.S.'s Motion to Exclude Evidence of Residential Use Being the Highest and Best Use in finding that there was credible evidence to present to the jury on the issue, and that it was for the jury as the trier of fact to determine the highest and best use for the property.

2. *Motion in Limine to Exclude Testimony of <u>Arthur E. Gimmy and Richard A. Watson.</u>*
Description of this and the remaining Motions will be more brief than above. This Motion was related to both the above and below  Motions.  It appeared from the comments made by the Court on October 17, 2005, that the Court either was denying this Motion also, or would be denying it in the upcoming written ruling.  As true of the Motion discussed in part 1, above, plaintiff wishes to clearly preserve the issues raised by this Motion, for post-verdict proceedings in the District Court, and for appeal from judgment.

3. *Motion in Limine to Exclude Evidence of <u>Defendant's Development Plans</u>*

It appeared from the comments made by the Court at the October 17, 2005, hearing, that the Court has reserved ruling on this Motion.   The Court has ordered defendant to notify the Court a day ahead of time during the trial prior to attempting to offer the development plan into evidence, for the purpose of making an offer of proof and having an evidentiary hearing

outside the presence of the jury.  If the Court ultimately allows this evidence in, plaintiff will also wish to preserve the issues raised by this Motion .  Plaintiff contends, briefly given that the Motion has already been argued, that there does not appear to be any known basis under Rules of Evidence 702 and 703, as applied by the Supreme Court in <u>Daubert</u> v. <u>Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993) and <u>Kumho Tire Company v. Carmichael</u>, 526 U.S. 137 (1999),  for either Mr. Gimmy or Mr. Watson to opine, that the one out of every four acres that could be developed if residential development were authorized, should or need be developed in the place and manner shown in the development plan.   Plaintiff further contends that there does not appear to be any known basis for concluding that defendant has adequately raised under Rules 71 A(h), 403, 702, and 703, an issue as to a "replacement" not being available, severance damages, or a separate zone of value,  given the rules and cases on this subject. (Cases cited in United States Reply to Defendant's Opposition to Motion to Exclude Development Plan at pp. 7-8, filed September 16, 2005, Rules 403, 702 and 703, <u>Daubert</u> and <u>Kumho Tire Company</u>)

Additionally, there is no issue raised as to suitability of the land for development that supports relevance of the development plan.  The issues raised by plaintiff such as lack of legal permissibility of residential development under the General Plan and zoning, and lack of water, apply to all of the 3200 acre ranch.  These issues are not specific to the portion of the ranch involved in the development plan.  The jury could be told that defendant has prepared one or more residential subdivision plans for the ranch, including the dates of preparation.  The plans themselves lack relevance but are unduly prejudicial.

*4.  Motion in Limine to (1) Exclude Evidence of Alleged Science of Alleged Dangers of EMF (Electromagnetic Fields) From the Transmission Line and (2) Exclude Cindy Sage from Testifying*

The Court either granted this Motion or intends to grant this Motion, as made clear by the comments made by the Court at the October 17, 2005, hearing.  Consequently, it is unnecessary for plaintiff to raise in this pre-trial Statement any wish to preserve the issues raised by the Motion.

13

B.    Additional Evidentiary Issues

Pursuant to Federal Rules of Civil Procedure 26(e) and 37(c), both plaintiff and defendant seek to exclude any evidence defendant seeks to introduce that was not properly disclosed prior to trial, as well as any evidence relating to settlement communications pursuant to Federal Rule of Evidence 408.

6.    Additional Factual Information re: Eminent Domain Case

A.    Information Re: Parcel in Dispute

The United States' easement interest obtained in or about August 2003 comprises 87.98 acres.  This easement falls within a larger parcel of property comprising 3,220.52 acres of raw grazing land, generally known as "Agua Fria".  The 87.98 acre easement comprises two components, a 74.89 transmission line easement as well as a 13.09 acre access easement.  The access easement provides access to the transmission easement.

The 3,220.52 parcel of land encompassing the easement whose value is in dispute in this action is located approximately one mile south of State Highway 152, about five miles south of Santa Nella in Merced County, California.

The parties identify more specific plans and/or maps identifying the 74.89 acre transmission line easement and the 13.09 acre access easement within their exhibits lists.

B.    Consolidation

The parties do not believe this action should be consolidated with any other actions.

C.    Suggested Procedures Re: Exchange of Comparable Sales Lists

The parties have already exchanged comparable sales lists in the form of appraiser reports.

D.    Evidence of Value Other than Comparable Sales

None presented.

7.    Relief Sought

Plaintiff initially deposited $39,430 with the Court as an estimated amount of just

compensation for the property taken.  On July 13, 2005, the Court ordered the court clerk to issue a check to defendant in the above amount, "plus interest earned, less distribution for registry service fee."  The trier of fact must deduct this sum from whatever amount it ultimately determines to be just compensation for the value of the property taken.  Plaintiff disclosed an expert report from property appraiser Tony Correia valuing the property interest taken at $76,518.81.

Defendant likewise disclosed an expert report from property appraiser Arthur Gimmy.  Mr. Gimmy values defendant's severance damages at $14,658,000.00.  Mr. Gimmy also provides two additional opinions based on certain "extraordinary assumptions" in which he values defendant's severance damages at higher amounts. Plaintiff moved in limine to prohibit Mr. Gimmy from testifying about among other things his second and third opinions.  The parties await the court's ruling in this respect.

8.     Points of Law

The sole issue to be presented to the trier of fact is that of just compensation due to defendant.  (Federal Rule of Civil Procedure 71A.)  It is defendant's position that, by definition, the determination of just compensation includes the determination of the issues of the highest and best use of the property, and the reasonable probability the property would be approved for a master plan residential community and would obtain the necessary water for the residential use.

VI.  Abandoned Issues

None.  It appears to the parties that the California Department of Fish & Game has abandoned its claim to compensation.

VII.  Witnesses

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO

15

PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

        A.  Plaintiffs' Witnesses

   The United States' Witnesses

          1.      Steve Webber - WAPA

          2.      Don Roberts - WAPA

          3.      Tony Correia - appraiser

          4.      Gary Sawyers - attorney for San Luis Water  District

          5.      Heidi Miller - WAPA

          6.      R. Steven Warner - WAPA

          7.      *Plaintiff's pretrial motions include a motion in limine to exclude Richard Watson's development plans.  Plaintiffs so moved pursuant to, among other things, Federal Rules of Evidence 401, 403, 701 and 702.  Plaintiff understands that the Court tentatively granted this motion, but may allow defendant to make an offer of proof regarding these plans by way of evidentiary hearing outside of the presence of the jury.  To the extent the Court ultimately allows Richard Watson to testify about his proposed development plans (a ruling to which plaintiff strenuously objects), then plaintiff intends to call a rebuttal witness regarding this issue.

Defendant believes that the Court tentatively denied plaintiff's motion to exclude the development plan as illustrative of the highest and best use of the property subject to an offer of proof prior to introduction.  And, defendant maintains that the development plan, which plaintiff seeks to exclude, is not Richard Watson's development plan; rather it is the development plan that was analyzed in the certified Environmental Impact Report for Agua Fria's inclusion into the San Luis Water District and is identified in that EIR as the Specific Urban Development Plan Diagram.  Moreover, defendant objects to plaintiff's attempt to call a rebuttal opinion witness regarding the development plan or the development potential of the property, in violation of Rule 26(c).

B.  Defendants' Witnesses

1.      Donn Campion - owner

2.      Arthur Gimmy - appraiser

3.      Richard Watson - land planner/development consultant

4.      Cindy Sage - environmental consultant and planner

VIII.  Exhibits

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

A.  Plaintiffs' Exhibits

1.      Attachments and schedules to complaint identifying property and location of subject property, etc.,

2.  November 11, 2003 Coxey Letter,

3.  September 21, 1995 letter, William Nicholson, Asst. Planning Director to William Gnass,

4.  Correia deposition/exhibits,

5.  Villages of Laguna Notice of Preparation/ Initial Study, November 2004,

6.  Merced County Year 2000 General Plan,

7.  The Potential Impact of EMF on Property Values, Gimmy, 11/1/94,

8.  Gimmy deposition/exhibits to same,

9.  Gimmy notes dated "9/16" re teleconference with Campion and attorneys,

10.  Gimmy notes dated "8/19",

11.  Gimmy letter to Downey Brand lawfirm, dated September 4, 2003,

12.  Gimmy notes dated "8/7/03",

13. Gimmy notes dated "12/22" re meeting with Robert King of planning department,

14. Gimmy notes dates "12/15" re meeting with Donn Campion,

15. Parcel map of subject property,

16. Photograph of property (Exh. 7 to Campion deposition),

17. July 6, 2001 correspondence (Campion to WAPA),

18. Campion's Petition for Annexation of Territory, undated,

19. San Luis Water District Resolution 94-677,

20. Further Analysis of Transmission Line Impact on Residential Property Values, Wolverton et al., The Appraisal Journal, July 2003,

21. Transmission Line Impact of Residential Property Values, Cowger et al., Right of Way, Sept./Oct. 1996,

22. Power Lines, Visual Encumbrance and House Values, Des Rosiers, 23 JRER No. 3-2002,

23. Watson Deposition & Exhibits,

24. Sawyers Deposition & Exhibits,

25. Photos of subject property,

26. Maps of subject property,

27. Declaration of Taking, filed August 7, 2003,

28. July 29, 2003 letter, R. Steven Warner to Donn Campion,

29. September 10, 2003 letter, R. Steven Warner to Donn Campion, and

30. Maps and charts regarding location, height, distance, etc. regarding power lines and power poles.

31. Article entitled "Transmission Line Impact on Residential Property Values" (Sept./Oct. 1996)

Plaintiff may supplement its exhibit list up to the time of the pretrial conference.

B.  Defendants' Exhibits

18

| # | Exhibit Description |
|---|---|
| 1 | Location of Agua Fria, Vicinity Map of Merced and Surrounding Counties |
| 2 | Map of general vicinity map |
| 3 | Map of Agua Fria Ranch |
| 4 | Map showing breakdown of Agua Fria between Wild Wind and Machado, Ranches |
| 5 | Topography map of Agua Fria |
| 6 | Aerial photo of general vicinity |
| 7 | Aerial photo of Agua Fria |
| 8 | Aerial photo of Agua Fria with ridge lines |
| 9 | Map of Agua Fria w/keys to ground photos of before condition (Campion) |
| 10 | Map of Agua Fria w/keys to ground photos of after condition (Campion) |
| 11 | Ground photos of towers |
| 12 | Villages conceptual dev. plan w/o Wild Wind |
| 13 | Initial conceptual dev. plan for Wild Wind |
| 14 | Villages dev. Plan w/Wild Wind |
| 15 | San Luis Water Dist. Boundary Map before Agua Fria inclusion |
| 16 | San Luis Water District Boundary Map After Agua Fria Inclusion |
| 17 | Water place of use map for Agua Fria |
| 18 | Map of Campion water rights properties |
| 19 | Kit fox movement zones affecting Agua Fria |
| 20 | Agua Fria Physical and Natural map w/Path 15 line constraints |
| 21 | Combination 5-minute animation of photographs and images of 3D computer model of Agua Fria, based on USGS topography |
| 22 | Scale Model of Agua Fria with Development Plan |
| 23 | Google Earth Aerial of location of Agua Fria to Major cities of California |
| 24 | Google Earth Aerial of Agua Fria in relation to Bay Area |
| 25 | Google Earth Aerial of Agua Fria within Merced County |

| 26 | Google Earth Aerial of Development Projects Los Banos |
| 27 | Google Earth Aerial Agua Fria with Path 15 with poles on ground |
| 28 | Google Earth Aerial Overview of Agua Fria with pre-existing power lines |
| 29 | Google Earth Aerial of overview of Diablo Grande |
| 30 | Google Earth Aerials of comparison of Diablo Grande and Agua Fria highway access points |
| 31 | Google Earth Aerial of Regional Wastewater Treatment Plant site with overlay of plant |
| 32 | Aerial photos of emerging planned residential developments east of Bay Area |
| 33 | Sales of property for development prior to date of valuation |
| 34 | Diablo Grande Oak Flat Villages |
| 35 | California High Speed Rail Northern California Alignments |
| 36 | Population Projections for the San Joaquin Valley by County (2000-2050) |
| 37 | Mission Viejo Company's Inventory Replacement Program |
| 38 | Directions of Residential Growth in California |
| 39 | Residential Growth into the Central Valley from the Bay Area |
| 40 | Developable area before condition |
| 41 | Developable area after condition |
| 42 | Location of Agua Fria to priority regions and corridors |
| 43 | Economic Development in the San Joaquin Valley Portion of the Greater Bay Area |
| 44 | Retirement Housing in the San Joaquin Valley Portion of the Greater Bay Area |
| 45 | Prime Soils Map |
| 46 | New Towns and Planned Communities in the Central Valley |
| 47 | Residential Subdivisions in Western Merced County |
| 48 | Geological Map(s) |

| 49 | Map of Mid-Sized and Large U.S. Cities.  Beyond Megalopolis; Exploring America's New 'Megapolitan' Geography.  2005 Metropolitan Institute at Virginia Tech Census Report Series. |
| 50 | Map of the Megapolitans.  Beyond Megalopolis; Exploring America's New 'Megapolitan' Geography.  2005 Metropolitan Institute at Virginia Tech Census Report Series (and NorCal enlargement) |
| 51 | Business 2.0 (Nov. 2005) Vol. 6, No. 10, articles on residential growth trends and real estate boom areas in Northern California, pp. 84 and 97. |
| 52 | The Villages of Laguna San Luis Community Plan Initial Study for Merced County (1/2005) |
| 53 | Phase I Environmental Site Assessment Report for Agua Fria (6/2001) |
| 54 | Agua Fria Multi Species Final Habitat Management Plan and Budget (12/2001) |
| 55 | Alternate Proposed Path 15 Route Maps (6/2003 & 8/2003) |
| 56 | Chronology of Precondemnation Events |
| 57 | Agua Fria Planning Process |
| 58 | Wild Wind Ranch Physical and Natural Constraints |
| 59 | Merced County Guidance Package Plan (3/93) |
| 60 | Merced County Department of Planning, Community Specific Plan Preliminary Draft for the Villages of Laguna San Luis (4/94) |
| 61 | Specific Urban Development Plan Diagram for Villages of Laguna San Luis |
| 62 | Administrative Draft Environmental Impact Report for the Villages of Laguna San Luis Community Specific Plan (2/95) |
| 63 | Merced County Year 2000 General Plan |
| 64 | San Luis Water District Resolution 94-677 Requesting LAFCO to annex Agua Fria the Annexation |
| 65 | San Luis Water District Resolution 96-715 certifying the Final EIR for Annexation |

21

| | |
|---|---|
| 66 | Agua Fria Final and Draft Environmental Impact Report for the Agua Fria Urban Village Inclusion |
| 67 | Agua Fria's Specific Urban Development Plan Diagram |
| 68 | U.S.F.W.S. EIR Comment Letter (5/94) |
| 69 | California Department of Fish & Game EIR Comment Letter (7/94) |
| 70 | Nicholson Letter (9/1995) and Memo (5/96) |
| 71 | Coxey Letter to Campion (11/2003) |
| 72 | S.L.W.D. Letter to Merced County Planning (6/94) |
| 73 | 2001 Villages "call" on Campion |
| 74 | LAFCO's Certificate of Completion Authorizing the Agua Fria Annexation (1/96) |
| 75 | State Water Resources Control Board's Water Rights Order for Agua Fria (6/97) |
| 76 | United States Department of Interior, Bureau of Reclamation's approval of Agua Fria inclusion into the District and the CVP (10/98) |
| 77 | San Luis Water District's Water Supply Assessment for the Villages of Laguna San Luis Project (9/2004) |
| 78 | Gimmy Agua Fria Valuation of Taking Chart (Based on 3,220 Acres) |
| 79 | Gimmy Agua Fria Valuation Taking Chart (Based on 4,520 Acres) |
| 80 | Gimmy Agua Fria Pre-Condemnation Damages Chart |
| 81 | Comparable Water Sales Map |
| 82 | Gimmy Comparable Sales Map |
| 83 | Explanatory Analysis of Comparables |
| 84 | Gimmy Comparable Sales Summary |
| 85 | Gimmy Previous Experience Map |
| 86 | Sage EMF Experience Chart |
| 87 | Sage Visual Impact Experience Chart |
| 88 | Before Condition Map |
| 89 | Before Condition (EMF) |
| 90 | Before Condition (Visual) |

| | | |
|---|---|---|
| 91 | After Condition with Path 15 |
| 92 | EMF (2,505 Amps.) |
| 93 | EMF (4,660 Amps.) |
| 94 | EMF (4,008 Amps.) |
| 95 | EMF (5,826 Amps.) |
| 96 | EMF Overlay Map (2,505 Amps.) |
| 97 | EMF Overlay Map (4,008 Amps.) |
| 98 | Tri-Valley News Articles |
| 99 | Pleasanton route re-alignment order and supporting documents by PUC |
| 100 | Jefferson-Martin News Articles |
| 101 | Jefferson route re-alignment order and supporting documents by PUC |
| 102 | Sacramento Bee Article |
| 103 | Prospective Homeowner Letter |
| 104 | Prospective Buyer Developer Letter |
| 105 | Perception of Transmission Line (International Electric Transmission Perception Project) |
| 106 | P.G.&E. EMF Bill Insert |
| 107 | Title 5 Setbacks |
| 108 | Draft EIS/EIR Volumes 2B and 2C Los Banos-Gates Supporting Environmental Report (11/86) |
| 109 | Supplemental Draft EIR for Los Banos-Gates Project (10/2001) |
| 110 | Visually Impaired Lands and Photo Locations |
| 111 | Property Photos (29) |
| 112 | WAPA specification and construction plans |
| 113 | Declaration of Taking |
| 114 | Construction of Path 15 photos |
| 115 | Rights acquired by government |
| 116 | Overall route map of Path 15 project |
| 117 | Path 15 loading data |
| 118 | PG&E/WAPA correspondence w/Campion |

IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions

Plaintiff identifies defendant's responses to interrogatory nos. 1 through 10.

X.  Further Discovery or Motions

As set forth in section 5, above, plaintiff filed four pretrial motions seeking to exclude various components of defendant's intended trial presentation.  The parties await the court's written ruling with respect to each of these motions.  In addition, both plaintiff and defendant intend to move in limine to exclude any and all evidence defendant has failed to previously disclose pursuant to Federal Rules of Civil Procedure 26(e) and 37(c), as well as to exclude evidence of settlement communications per FRE 408.

XI.  Stipulations

See undisputed facts, above.

XII.  Amendments/Dismissals

None at this time.

XIII.  Settlement Negotiations

The parties have previously discussed the possibility of settlement.  The parties believe settlement does not appear feasible at this time.

XIV.  Agreed Statement

Presentation of the Action through an Agreed Statement of Facts does not appear to be feasible in this action beyond those undisputed facts listed in this report.

XV.  Separate Trial Of Issues

None.

XVI.  Impartial Experts - Limitation Of Experts

Plaintiff filed no less than four pretrial motions in this action, each of which addressing the extent defendant's intended expert testimony should or should not be presented at trial.  The parties await the Court's rulings regarding each of these motions.  Accordingly, the parties are

not in a position to determine at this time the extent Court-appointed expert witnesses are advisable in this case.

XVII.  Attorneys' Fees

Defendant's answer requests attorneys' fees in this action.  The United States maintains that the propriety of attorneys' fees should be addressed after trial.  Prior to the issuance of attorneys' fees, if any, the Court must determine matters including the identity of the prevailing party, as well as the extent that the United States' position was substantially justified.  (28 U.S.C. §2412).  The Court must also determine, to the extent fees are deemed justified, whether an exception to the $125/hr cap is justified, as well as the extent defendant incurred such fees in this action.  Plaintiff maintains that any claim for attorney's fees should be decided by post-trial or post-judgment motion to the Court.


21.    Special Handling of Trial Exhibits

None required.

22.    Miscellaneous

Plaintiff intends to call a witness from Western Area Power Administration to describe the extent of the land taken, introduce maps of the easement areas, and provide the specifications of the line constructed through the Campion property.  Plaintiff wishes to call this witness as part of its case in chief.  Defendant contends this witness should be called out of order at the opening of testimony, as is the procedure in California condemnation cases.

XVIII.  Further Trial Preparation

A.  Final Witness List

The parties are ordered to file and serve their final list of witnesses by Friday, November 4, 2005 at 12:00 p.m.  Additionally, at that time Plaintiffs shall disclose the order of witnesses so that Defendants will be prepared for cross-examination.

Except upon the showing set forth above in section VII, a party may not add

25

witnesses to the final list of witnesses, or to any other updated witness list, who are not disclosed in this Order in Section VII.

### B. Trial Briefs

The parties are directed to file and serve a Trial Brief by Friday, November 4, 2005 at 12:00 p.m.  Local Rule 16-285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine. Any response to a Trial Brief shall be filed and served by Monday, November 7, 2005, at 12:00 p.m.

### C. Duty of Counsel to Pre-Mark Exhibits

The parties are ordered to confer no later than  Friday, November 4, 2005 at 12:00 p.m. for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiffs' exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1. Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a) Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff Friday, November 4, 2005 at 12:00 p.m., one for use by the Courtroom Clerk and the other for the court; and

(b) One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2. Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a) Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall

26

be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further foundation.

(b)  As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)  Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d) Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.  Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

D.  Discovery Documents

27

1   By Friday, November 4, 2005 at 12:00 p.m., each party shall file a list of all

2   discovery documents the party intends to use at trial.  The list shall indicate whether each

3   discovery document has previously been lodged with the Clerk.  If the discovery document has

4   not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by

5   Friday, November 4, 2005 at 12:00 p.m.

6       E.  Motions In Limine Hearing and Briefing Schedule

7       The hearing for motions in limine will be held on Wednesday, November 2, 2005,

8   at 10:00 a.m.  In addition to addressing any filed motions in limine, at that time the court will

9   also settle, to the extent possible, any other matter pertaining to the conduct of the trial.

10      Counsel are expected to be fully cognizant of the legal issues involved in the case

11  by the date of the hearing for motions in limine.

12

13      F.  Morning Conferences During Trial

14      During the trial, it is the obligation of counsel to meet with the court each morning

15  to advise the court and opposing counsel as to what documents are proposed to be put into

16  evidence that have not previously been admitted by stipulation, court order, or otherwise ruled

17  upon.  The court will rule on those documents, to the extent possible, prior to the commencement

18  of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of

19  testimony, the court will rule as requested upon the receipt of such testimony.

20      The court shall consider any other legal matter at morning conferences as well.

21  The court does not wish to recess the trial to hear legal argument outside of the presence of the

22  jury, and proper preparation by counsel will eliminate the need for that result.

23      G.  Order Of Witnesses

24      In order to make the trial operate efficiently and smoothly, each counsel has the

25  continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at

26  each trial session.

27

28                                      28

H.  Voir Dire

The parties shall file proposed voir dire questions, if any, by  Friday, November 4, 2005 at 12:00 p.m.

Additionally, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel are directed to lodge with the court on the first morning of trial a list of the prospective witnesses they expect to call, omitting any witness listed in this Pretrial Order whom the party no longer intend to call.  This list shall contain the names of the each witness, and the business and/or home address of each witness.

I.  Proposed Jury Instructions

The parties shall file proposed jury instructions by Friday, November 4, 2005 at 12:00 p.m., along with a copy of the proposed instructions on a 3-1/2 inch computer disc, preferably formatted for WordPerfect 8.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer immediately after the Friday, November 4, 2005 at 12:00 p.m. to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

J.  Proposed Verdict Form

Each party shall file a proposed verdict form by Friday, November 4, 2005 at 12:00 p.m.

1  K.  Use Of Videotapes

2       Any party wishing to use a videotape for any purpose during trial shall lodge a

3  copy of the videotape with the Courtroom Clerk on Friday, November 4, 2005 at 12:00 p.m.  If a

4  written transcript of audible words on the tape is available, the court requests that the transcript

5  be lodged with the court, solely for the aid of the court.

6   L.  Use of Videotapes

7       If counsel intends to use a laptop computer for presentation of evidence, they shall

8  contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk

9  will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a

10  representative of the Information and Technology Department and receive a brief training session

11  on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel

12  intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when

13  preparing the presentation.

14  M.  Agreed Summary Of The Case

15       The parties shall lodge with the Courtroom Clerk a joint agreed summary of the

16  case, briefly outlining the positions of the parties by Friday, November 4, 2005 at 12:00 p.m.

17  The summary will be read to the jury panel at the outset of the trial solely for the purposes of

18  assisting in the jury selection process.  The contents of the summary shall not be deemed to be

19  evidence or an admission or stipulation by a party as to any contested fact or issue.

20  XIX.  Objections to Pretrial Order

21       Any party may, within six calendar days after the date of service of this order, file

22  and serve written objections to any of the provisions of this order.  Local Rule 16-283.  Such

23  objection shall specify the requested corrections, additions or deletions.

24  XX.  Rules of Conduct During Trial

25  A.  General Rules

26  1. All participants in the trial shall conduct themselves in a civil manner.  There

27

28                                          30

shall be no hostile interchanges between any of the participants.

2.   All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.   Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.   Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

B.  Jury Selection

1.   The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

C.  Opening Statements

1.   Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

D.  Case in Chief

1.   Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.   At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

E.  Witnesses

1.   Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.   Before approaching a witness with a writing, counsel shall first show the

writing to opposing counsel.

F.  Exhibits

1.  All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.  An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.  The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

G.  Objections

1.  No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.  The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

H.  Closing Argument

1.  Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

**Dated:**   **November 1, 2005**           **/s/ Anthony W. Ishii**
h2ehf                                UNITED STATES DISTRICT JUDGE

33